UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| TIMOTHY DAVID ORR,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:26-CV-28 |

**OPINION AND ORDER**

On February 4, 2025, Claimant brought this action under 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security. [Doc. 1]. Upon consent of the parties pursuant to 28 U.S.C. § 636(c), this Court has jurisdiction over this matter through entry of final judgment. [Doc. 11].

Claimant filed his brief on April 27, 2026, and in it contends that the administrative law judge ("ALJ") erred in formulating Claimant's residual functional capacity ("RFC") because she failed to account for certain of Claimant's allegedly severe impairments, and to adequately address Claimant's moderate impairments in maintaining concentration and persistence and in interacting with the public, accepting supervisor instruction, and getting along with others. [Doc. 12]. Specifically, Claimant points to the ALJ's finding that he did not have a "severe neurocognitive disorder or borderline intellectual functioning, even though both state-agency psychological consultants found those impairments severe and the agency's own examining psychologist diagnosed both on a rule-out basis and recommended further testing that the ALJ never ordered." [Doc. 12, p. 9]. Additionally, Claimant argues that the ALJ fully failed to account for Claimant's moderate limitations in

interacting with the public, accepting supervisor instruction, and getting along with coworkers, and failed to properly account for Claimant's moderate impairment in maintaining concentration and persistence because the limitation in the RFC to "simple instructions, no specific production rate, occasional change" is insufficient. [Doc. 12, p. 16-17].

In response, the Commissioner argues that the ALJ's RFC finding fully accounted for Claimant's symptoms and that the RFC formulated was supported by the record. [Doc. 13]. The Commissioner also notes that Plaintiff "cites no evidence justifying any greater restrictions." [Doc. 13, p. 3].

The Court conducted a hearing in this matter by video on August 13, 2026, for the purpose of issuing a ruling based upon the parties' filings and record in this matter. The parties had previously asked the Court to waive oral argument, and the Court granted that request. [Docs. 15, 16]. Maren Miller Bam, Esq. appeared for Claimant while Craig Hundley, Esq. appeared for the Commissioner. During the hearing, the Court provided a brief introduction to the matter and outlined the issues before the Court and noted that it had thoroughly reviewed the parties' filings and the record in this matter. The Court then proceeded to issue its ruling from the bench.

## I. APPLICABLE LAW – STANDARD OF REVIEW

The Court set forth the applicable law while issuing its oral ruling.

## II. ANALYSIS

The Court first addressed Claimant's contention that the ALJ's failure to designate Claimant's schwannoma, his neurocognitive disorder, and borderline intelligence as severe impairments required remand. The Court noted that because the ALJ found that Claimant had at least one other severe impairment, her failure to label these particular impairments as severe was not reversible error. However, Claimant also contended that the ALJ's failure to adequately address

these conditions in her opinion constituted error because that failure violated the ALJ's articulation requirements.

As to the schwannoma, Claimant's records reveal that he likely suffered from a schwannoma at T8-T9, and Claimant rightly notes that the ALJ did not articulate specifically as to the condition. At the same time, the Court found that when formulating Claimant's RFC, the ALJ adequately addressed Claimant's complaints of physical pain in the areas which would be expected to be impacted by this condition. More specifically, the ALJ addressed the functioning of Claimant's neck and back and observed that Claimant had not received treatment for these areas of his body, nor had he seen a neurologist despite being referred to one. (Tr. 19). Because the ALJ addressed the functioning of the parts of Claimant's body which would likely be impacted by a schwannoma, any error in her failing to address this diagnosis by name separately would be harmless.

The question of whether the ALJ adequately considered Claimant's diagnoses of neurocognitive disorder and borderline intelligence is a more challenging one. Ultimately, the Court found that, for reasons detailed on that record, the ALJ did not sufficiently develop the record, and then failed to articulate sufficiently as to how these conditions would or would not be expected to impact Claimant's functioning. More specifically, consultative examiner Chris Morrison, PhD opined as follows: "Mr. Orr appears to fall into the borderline range of intellectual functioning. It's important to note that no intellectual testing was requested or performed as part of this evaluation, however given Mr. Orr's performance on the mental status examination, his educational history, and his medical history, *further psychological testing is highly recommended* (i.e., WAIS-IV, WRAT-5, and WMS-IV)." (Tr. 806) (emphasis added). In documenting his diagnoses for Claimant, Dr. Morrison also noted that whether Claimant had borderline intellectual functioning and an unspecified neurocognitive disorder needed to be ruled out. *Id.* In reading Dr.

Morrison's opinion as a whole, the Court finds that Dr. Morrison thought it was likely that Claimant would have more significant limitations than he had assigned to him if testing confirmed that Claimant suffered from these two conditions. Given the types of mental limitations which often accompany these conditions, there is no question that they can significantly impact the work-required performance of mental tasks.

The ALJ referenced three medical record entries in determining that Claimant had only a moderate impairment in understanding, remembering or applying information. (Tr. 15). The first was from December 2021 when Claimant presented to the emergency room stating that he had felt altered since Christmas Eve. *Id.* The ALJ does not mention the report by Claimant's family that they thought Claimant was suffering from the effects of an untreated seizure disorder and possibly had used iv drugs and was growling.[1] *Id.* at 510, 512. Ultimately, Claimant was admitted to an inpatient psychiatric facility directly from the emergency room. *Id.* at 516. It does not appear that either Claimant's intellectual functioning or whether he had a neurocognitive impairment were specifically addressed, and there was little overall assessment of Claimant's ability to understand, remember or apply information.

The ALJ then states that during a hospital stay after Claimant was involved in a car crash, he "was noted to have mild problem-solving skills, moderate issues with abstract reasoning, mild problems with judgment, and decreased insight." *Id.* at 15. Claimant specifically advised medical personnel that he believed he had suffered a seizure that caused him to wreck his vehicle. *Id.* at 680. Again, it does not appear that there was any attempt to assess Claimant's intellectual functioning or whether he had a neurocognitive impairment, and little overall assessment of Claimant's ability to understand, remember or apply information.

---

[1] The ALJ notes in her opinion that Claimant is no longer abusing illegal substances.

Finally, the ALJ discusses Dr. Morrison's findings, noting that he found Claimant's thought process to be clear and logical and that Claimant was able to follow his instructions. *Id.* The ALJ then acknowledges that Dr. Morrison found Claimant to have poor basic vocabulary and math skills and states that he did not perform any intellectual testing; however, she omits from her opinion any reference to the doctor's strong recommendation that intellectual testing be performed. *Id.* While the ALJ further says that Dr. Morrison found Claimant to be in the borderline intellectual functioning range, it appears from his report that Dr. Morrison was instead unable to appropriately account for any borderline intellectual functioning without the recommended testing. (Tr. 806). The ALJ makes no mention of Dr. Morrison's note that whether Claimant had a neurocognitive disorder should also be further assessed. *Id.* at 15.

It is important to note that the ALJ appears to place significant weight on Dr. Morrison's opinion as to Claimant's ability to understand, remember, and apply information. The other medical evidence she relied upon provided, at best, quite limited insight as to Claimant's ability to perform these functions. The ALJ also relied on what she described as a failure by Claimant to provide testimony as to these limits; however, Claimant did testify during his hearing that he had two to three seizures per month, and when he experienced one, he could not remember anything, was basically in a "delusional state," and that the effects could last for an extended period. *Id.* at 39, 44. Although the ALJ found that record evidence did not support Claimant's assertion about the frequency of his seizures, there is no doubt that Claimant has them with some regularity. Moreover, the memory issues arising from Claimant's seizures would be in addition to those he may experience if he also has borderline intellectual functioning and/or a neurocognitive condition.

Given that the ALJ is charged with developing the administrative record upon which her decision rests, and in light of her significant reliance on the opinion of Dr. Morrison, while not at the same time ordering the testing that he found was required for Claimant's mental functioning to

be fully assessed, the Court must find that the ALJ erred. *Lashley v. Sec'y of Health and Human Servs*., 708 F.2d 1048, 1051-52 (6th Cir. 1983) (observing that an ALJ has the responsibility for developing the record, while not transforming into a partisan advocate for a claimant). While the Commissioner rightly argues that the ALJ would not have been required to order this testing if there was other record evidence which would fairly permit her to assess Claimant's mental functioning in these areas, the Court finds that such evidence was not available in the record or if it was, the ALJ failed to adequately articulate regarding that evidence. Because the ALJ failed to develop the record as to Claimant's mental functioning, and his mental functioning is at the heart of this case, the Court must further find that this failure prejudiced Claimant and deprived him of a substantial right, meaning that the error cannot be considered harmless. *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007); *see also Ackles v. Comm'r of Soc. Sec.*, 470 F. Supp. 3d 744, 752 (N.D. Ohio 2020).

Finally, the Court will address Claimant's arguments that the RFC the ALJ formulated for him fails to adequately account for his moderate limits in concentration, persistence, and pace by merely limiting him to "simple, routine tasks" and fully fails to account for his moderate impairment in the ability to interact with the public, accept supervisor instruction, and get along with coworkers. After the record is further developed in this matter on remand, should the ALJ once again conclude that limiting Claimant to "simple, routine tasks" adequately accounts for any limitations he has in concentration, persistence, and pace, she should provide appropriate articulation as to why she has reached that conclusion. [2]

---

[2] ALJs must "provide a coherent explanation of their reasoning, clearly explain their consideration of the opinion and identify the evidence supporting their conclusions, and otherwise explain how they considered the supportability and consistency factors as to each medical opinion." *Kirkland v. Kijakazi*, No. 3:22-CV-60-DCP, 2023 WL 3205330, at *9 (E.D. Tenn. May 2, 2023) (quoting *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021)); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020); *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021)) (internal citations omitted). "In other words, the ALJ must 'build an accurate and logical bridge between the evidence and the ALJ's conclusion.'" *Id.* (quoting *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021)).

Further articulation will also be necessary on remand as to Claimant's social limitations. Dr. Morrison found Claimant to have mild impairment in social relating (Tr. 806), while state agency reviewers Drs. Prout and Starce found Claimant to have moderate limitations in interacting with the public, accepting supervisor instruction, and getting along with co-workers. *Id.* at 81–84, 128. The ALJ accepted Dr. Morrison's opinion that Claimant was mildly limited in social functioning over the opinions of Drs. Prout and Starce. (Tr. 21). The ALJ supported that decision by observing that during his examination by Dr. Morrison, Claimant had logical speech and was able to maintain eye contact. *Id.* The Court finds this observation by the ALJ does not meet the articulation requirements for rejecting the opinions of Drs. Prout and Starce. Further, the Court notes that despite accepting Dr. Morrison's opinion that Claimant was mildly limited in social functioning, the ALJ did not include any social interaction limitations when formulating Claimant's RFC, nor did she articulate as to why she determined that it was unnecessary to include them. On remand, should the ALJ find Claimant not to be disabled, in formulating Claimant's RFC, the ALJ should either include social limitations for Claimant or articulate why she finds it unnecessary to do so.

## III. CONCLUSION

After considering the parties' filings and the record in this matter, and for the reasons stated above and on the record while issuing its oral ruling, the Court finds that given the ALJ's decision to heavily rely on the opinions offered by Dr. Morrison, it was necessary for her to order the testing that he strongly recommended in order to determine whether Claimant is functioning at the borderline range of intelligence and whether he has a neurocognitive disorder and, if so, whether Claimant is further limited in his mental ability to perform work. The Court further finds that the ALJ failed to adequately articulate why she chose not to include any limitation on Claimant's ability to interact with the public, coworkers, and supervisors, given the opinions contained within

the record that Claimant did experience limits in these areas. Accordingly, Claimant's request for **REMAND** [Docs. 1, 12] is **GRANTED** and this matter is remanded to the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g). *See Shalala v. Schaefer*, 509 U.S. 292, 296 (1993): *Melkonyan v. Sullivan*, 501 U.S. 89, 97-98 (1991). The Court takes this action pursuant to the power of this Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Upon remand, the Commissioner **SHALL** further develop the record as necessary to fully evaluate Claimant's mental functioning to determine whether Plaintiff is disabled within the meaning of the Social Security Act. Further, if the ALJ determines that Claimant is not disabled, she should adequately articulate why she finds that limiting Claimant to jobs involving "simple, routine tasks" adequately addresses his limits in concentration, persistence, and pace, and should provide articulation as to why she includes or omits from the RFC formulation limitations related to Claimant's ability to interact with the public, accept supervisor instruction, and get along with coworkers.

SO ORDERED:

/s/Cynthia Richardson Wyrick
United States Magistrate Judge